**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| JAY GREENE, | No. 4:25-cv-1132-JM |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES** |
| TIM GRIFFIN, in his official capacity as Attorney General of the State of Arkansas; SARAH HUCKABEE SANDERS, in her official capacity as Governor of the State of Arkansas; LESLIE RUTLEDGE, in her official capacity as Lieutenant Governor of the State of Arkansas; BRIAN S. EVANS, in his official capacity as Speaker of the House of Representatives of the State of Arkansas; BART HESTER, in his official capacity as President Pro Tempore of the Senate of the State of Arkansas, | |
| Defendants. | |

Plaintiff Jay Greene, through counsel, submits this Memorandum in Support of the Motion for Attorneys' Fees.

**INTRODUCTION**

Mr. Greene has prevailed in his effort to eliminate Arkansas' racial quota for appointments to the Arkansas Ethics Commission. He therefore moves this Court, pursuant to 42 U.S.C. § 1988(b) and 28 U.S.C. § 1920, for an award of attorneys' fees, litigation expenses, and costs for his successful lawsuit in this matter.

The Court entered the Final Judgment, Declaratory Judgment, and Permanent Injunction on January 9, 2026, holding that Ark. Code Ann. § 7-6-217(b)(1) (Race Quota) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and permanently

1

enjoined Defendants from using race to appoint members to the Arkansas Ethics Commission. ECF No. 13.

As the prevailing party, Mr. Greene requests reasonable attorneys' fees in the amount of $2,108.75, together with mailing fees necessarily incurred in the prosecution of this action, as part of the § 1988 award in the amount of $44.68. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jaquette v. Black Hawk Cnty.*, 710 F.2d 455, 458–59 (8th Cir. 1983); *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 995 (8th Cir. 2012). These amounts are documented in the attached declarations of Caleb R. Trotter and Laura M. D'Agostino. In addition, Mr. Greene requests recovery of taxable costs under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920, specifically the filing fee of $405.00 necessarily incurred in connection with this action, as documented in the accompanying Motion to Tax Costs.

These amounts are reasonable. Counsel exercised billing judgment, performed efficiently and effectively, and their hourly rates reflect prevailing rates in this jurisdiction. Mr. Greene succeeded in his action, resulting in the cessation of Arkansas' unconstitutional Race Quota. Accordingly, Mr. Greene is entitled to $2,108.75 in attorneys' fees, $44.68 in § 1988 litigation expenses, and $405.00 in taxable costs.

## FACTUAL AND PROCEDURAL BACKGROUND

The Arkansas Ethics Commission serves as the compliance and enforcement agency under Arkansas' standards of conduct and disclosure laws concerning candidates for public office, state and local public officials, lobbyists and committees, and individuals involved with initiatives, referenda, and other matters referred to the voters. Ark. Code § 7-6-217. The Commission is made up of five members who serve five-year staggered terms. *Id.* § 7-6-217(a)(2).

The Governor, Attorney General, Lieutenant Governor, Speaker of the House of Representatives, and the President Pro Tempore of the Senate (Appointing Officials) are each responsible for appointing a member to the Commission. *Id.* § 7-6-217(a)(1). When this lawsuit was initiated, the Appointing Officials were required to ensure that "at least one (1) member of a minority race, one (1) woman, and one (1) member of the minority political party" serve on the Commission. *Id.* § 7-6-217(b)(1). Also at the time this lawsuit was filed, there were two vacancies on the Commission—one for which Governor Sanders was responsible and one for which Attorney General Griffin was responsible. Governor Sanders appointed a member to her vacancy, while Attorney General Griffin refused to make an appointment, stating that the Race Quota was unconstitutional.

Mr. Greene was eligible to serve on the Commission but was excluded solely because of his race. The Race Quota required that at least one "member of a minority race" be appointed to the Commission, and no current Commission member is a minority. As a result, Defendants were compelled to consider race when making appointments, preventing Mr. Greene from receiving equal consideration despite being qualified, willing, and able to serve. Until the Race Quota was declared unconstitutional and enjoined, Mr. Greene could not be appointed without regard to his race.

Mr. Greene filed his complaint on October 29, 2025. ECF No. 1. On December 29, 2025, Defendants filed their answer, admitting that the Race Quota was unconstitutional. ECF No. 11. Thereafter, the parties filed a Joint Motion for Entry of Judgment requesting that the Court declare the Race Quota unconstitutional, enter a permanent injunction prohibiting Defendants from using race in Commission appointments, and recognize Mr. Greene's entitlement to reasonable attorneys' fees under 42 U.S.C. § 1988. ECF No. 12. On January 9, 2026, the Court entered the Parties'

3

proposed judgment and issued a permanent injunction against Defendants using race to appoint members to the Arkansas Ethics Commission. ECF No. 13.

<strong>ARGUMENT</strong>

**I.    Mr. Greene is entitled to attorneys' fees and costs**

Mr. Greene is the prevailing party entitled to recover attorneys' fees because he achieved the primary objective of his lawsuit—eliminating a discriminatory barrier that prevented equal competition for appointments to the Ethics Commission. 42 U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce . . . 42 U.S.C. §§ 1981–1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *See also* Fed. R. Civ. P. 54(d)(1) (prevailing party entitled to costs).

The Supreme Court has emphasized that district courts generally *must* award fees to prevailing civil rights plaintiffs to ensure effective access to the judicial process. *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 760–61 (1989); *Fayetteville Pub. Libr. v. Crawford Cnty.*, No. 5:23-CV-5086, 2025 WL 1462573, at *3 (W.D. Ark. May 21, 2025) (citing *Hensley*, 461 U.S. at 429). A plaintiff may be considered a prevailing party if he succeeds on any significant issue that achieves some of the benefit sought in bringing suit. *Hensley*, 461 U.S. at 433 (citation omitted). Consent decrees can also confer prevailing party status. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001); *Charles v. Coleman*, 689 F.2d 774, 776 (8th Cir. 1982); *Reel v. Arkansas Dep't of Correction*, 672 F.2d 693, 697 (8th Cir. 1982). Here, the Court's judgment permanently enjoined Defendants from enforcing the Race Quota, achieving the core relief Mr. Greene sought.

## II.    Mr. Greene's request for attorneys' fees is reasonable

Since Mr. Greene succeeded in permanently enjoining the Race Quota, he is entitled to all fees reasonably incurred in the course of litigation. *Hensley*, 461 U.S. at 429. The Eighth Circuit evaluates fees by calculating the "lodestar"—the product of reasonable hours expended and reasonable hourly rates. *League of Women Voters of Missouri v. Ashcroft*, 5 F.4th 937, 939–40 (8th Cir. 2021). The lodestar may be adjusted only in extraordinary circumstances, and there is a strong presumption that it is sufficient. *Dilbeck v. Minor*, No. 5:17-CV-5116, 2018 WL 5284211, at *2 (W.D. Ark. Oct. 24, 2018) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010)).

### A.  The hours are reasonable

Pacific Legal Foundation spent 7.54 hours on this matter, all directly related to drafting the complaint, communicating with Defendants' counsel, and reviewing the proposed judgment. *Hensley*, 461 U.S. at 434 (attorneys must exclude hours that are "excessive, redundant, or otherwise unnecessary").[1] Counsel began work in October 2025 and efficiently resolved the case. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). *See also* Trotter Decl.; D'Agostino Decl.

### B.  The hourly rates are reasonable

Mr. Trotter's and Ms. D'Agostino's hourly rates are reasonable. The following table outlines the hours and rates for the lodestar amount of the reasonable fees incurred in this matter and the total fee amount.

| Attorney | Admitted | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Caleb Trotter | 2015 | 1.41 | $300 | $423 |
| **Laura D'Agostino** | **2017** | **6.13** | **$275** | **$1,685.75** |
| | | | **Grand Total**: | **$2,108.75** |

---

[1] Pacific Legal Foundation has also excluded attorneys' fees expended in preparing this motion.

A reasonable hourly rate is usually the "ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982) (en banc)).

Pacific Legal Foundation utilizes a "team litigation" approach to ensure that their cases benefit from a mix of attorneys with varying skills whose practical experience and expertise combine to create the most efficient, knowledgeable, and skilled representation of their clients. Rather than seeking to recover fees for every attorney, paralegal, and law clerk who contributes to the success of this lawsuit, Pacific Legal Foundation seeks fees only for the core litigation team members, Caleb Trotter and Laura D'Agostino.

**Counsel Experience**:

- Caleb Trotter: Lead counsel; responsible for finalizing the complaint, negotiating resolution; reviewing correspondence and the proposed judgment. Mr. Trotter has more than 10 years of litigation experience, including extensive constitutional litigation, and has successfully litigated equal protection claims in federal courts across the country.

- Laura D'Agostino: Co-counsel; assisted in drafting the complaint; reviewed proposed judgment and had negotiation discussions with Mr. Trotter. Ms. D'Agostino has 8 years of experience of litigation, including extensive constitutional litigation, and has successfully litigated equal protection claims in multiple federal courts.

Court precedent confirms these rates are reasonable. *See Fayetteville Public Library*, 2025 WL 1462573, at *4 (attorneys' fees awarded at a rate of $350 per hour for an attorney with twenty-seven years of legal experience in a First Amendment challenge); *Libertarian Party of Arkansas v. Thurston*, No. 4:19-CV-00214-KGB, 2023 WL 6391714, at *6 (E.D. Ark. Sept. 29, 2023), *judgment entered*, No. 4:19-CV-00214-KGB, 2023 WL 6392672 (E.D. Ark. Sept. 29, 2023)

6

(attorneys' fees awarded at rates of $250 and $300 per hour, depending on the nature of the legal work completed); *Dilbeck*, 2018 WL 5284211, at *2 (attorneys' fees awarded at rates between $275 and $300 for attorneys that had more than two decades of litigation experience in constitutional challenges); *Sexton v. Ellison*, No. 3:06CV00163BSM, 2009 WL 1940523, at *3 (E.D. Ark. July 2, 2009) (attorneys' fees awarded at rates of $250 and $200 per hour in a 42 U.S.C. § 1983 challenge).

### C. The hours and rates are reasonable under the *Johnson* factors

In addition to the presumptive reasonableness of the lodestar figure, the requested hours and rates satisfy most of the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). After determining the lodestar amount, district courts generally evaluate the "ultimate reasonableness" of the award by considering these factors. The Eighth Circuit has adopted these guidelines. *Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*, 714 F.2d 823, 825 (8th Cir. 1983). These other factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19, *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[2]

Here, the key factors are as follows:

---

[2] The Supreme Court noted in *Hensley* that many of these factors as "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434, n.9.

- **Novelty and difficulty; skill required**: This lawsuit is part of Pacific Legal Foundation's public boards initiative, a novel initiative that seeks to remove discriminatory barriers that preclude citizens from serving on government boards. *See*, *e.g.*, *Do No Harm, Foundation Against Intolerance and Racism v. Sanders*, No. 4:25-cv-00282-LPR (E.D. Ark. Mar. 25, 2025); *Haile v. Hutchinson*, No. 4:23-cv-00005-KGB (E.D. Ark. filed Jan. 4, 2023). There was significant research and time that went into developing this case that is not reflected within the requested attorneys' fees, but great skill and understanding of constitutional litigation is required in bringing these types of challenges.

- **Results obtained; public interest**: Mr. Greene achieved the elimination of the Racial Quota, ensuring equal access for all Arkansas citizens.

- **Experience and reputation; customary fees; awards in similar cases**: Counsel have extensive constitutional litigation experience; other § 1983 and civil rights cases in Arkansas support these rates.

## CONCLUSION

Mr. Greene completely succeeded in his action, resulting in the enjoining of Arkansas' unconstitutional Race Quota for appointments to the Ethics Commission. Accordingly, this Court should grant the Motion and award him $2,108.75 in attorneys' fees, $44.68 in § 1988 litigation expenses, and $405.00 in taxable costs.

DATED: January 23, 2026.

Respectfully submitted,

s/ Caleb R. Trotter

AARON S. NEWELL                     CALEB R. TROTTER
Ark. Bar No. 2022182                Cal. Bar No. 305195
Pacific Legal Foundation            Pacific Legal Foundation
30 Oak Leaf Dr.                     555 Capitol Mall, Suite 1290
Conway, AR 72032                    Sacramento, CA 95814
Telephone: (501) 697-3184           Telephone: (916) 419-7111
ANewell@pacificlegal.org            Facsimile: (916) 419-7747
                                    CTrotter@pacificlegal.org

                                    LAURA M. D'AGOSTINO*
                                    Va. Bar No. 91556
                                    Pacific Legal Foundation
                                    3100 Clarendon Boulevard
                                    Suite 1000
                                    Arlington, VA 22201
                                    Telephone: (202) 888-6881
                                    Facsimile: (916) 419-7747
                                    LDAgostino@pacificlegal.org

                                    *Pro hac vice

                                    Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

The undersigned hereby certify that on January 23, 2026, I electronically filed the foregoing document with the Clerk of the Court via the CM/ECF system, which will cause a copy to be served upon counsel of record.

s/ Caleb R. Trotter
CALEB R. TROTTER
Cal. Bar No. 305195

Attorney for Plaintiff

9